UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:09CV-00120-JHM

MICHAEL L. GOUGH and                                                    PLAINTIFFS
CAROL GOUGH

VS.

TRANSAMERICA LIFE INSURANCE COMPANY
LIFE INVESTORS INSURANCE COMPANY OF AMERICA                DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, Transamerica Life Insurance Company, for summary judgment [DN 15], on a motion by Plaintiffs, Michael and Carol Gough, for summary judgment [DN 23], on a motion by Defendant to strike Plaintiffs' sur-reply [DN 45], and on a motion by Plaintiff for leave to file Judge G. Ross Anderson, Jr.'s Memorandum Opinion and to find that Judge Anderson's decision controlling in this action [DN 47]. Fully briefed, these matters are ripe for decision.

**I. STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving

party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

This action arises under a supplemental cancer insurance policy issued by Equity National Life Insurance Company ("Equity National") to Plaintiffs, Mike and Carol Gough ("Goughs"). Equity National is the predecessor in interest to Life Investors Insurance Company of America ("Life Investors") and Transamerica Life Insurance Company ("Transamerica").[1] Plaintiffs purchased a supplemental cancer insurance policy, Policy No. 01E128866, from Equity National on December 9, 1994. The Policy provided coverage for "actual charges" incurred for certain services. For several decades, the Defendant interpreted "actual charges" under these supplemental cancer insurance policies as the amount billed by the health care provider before any discount, reduction, write-off, or third-party payment. In 2006, without notice to its policyholders, Defendant altered its interpretation of "actual charges" paying benefits based upon the amount actually accepted by

---

[1] All references to Defendant or Transamerica includes Life Investors and Equity National unless noted.

the health care provider as payment in full for the services rendered as reflected in the insured's Explanation of Benefits.

In November of 2008, Carol Gough was diagnosed with breast cancer which included a partial mastectomy and began incurring charges for cancer-related services and treatments. In April 2009, Plaintiff began submitting claims for medical treatment to the Defendant under the Policy based upon the full amount billed by medical providers for her cancer treatment. James Byrne, Defendants' Director of Claims Analysis, testified that Transamerica's records show that Transamerica processed claims submitted by Plaintiff totaling $65,013.38 for services rendered between September 19, 2008, and April 21, 2009. Relying upon its new interpretation of "actual charges," Defendant declined to pay Plaintiffs' entire claim. Instead, Defendant paid benefits to Plaintiffs in the amount of $15,168.28. As a result of these actions, on November 9, 2009, Plaintiffs filed suit against Transamerica in Union Circuit Court for breach of contract for the underpayment of benefits due and owing under the policy.

*Runyan v. Transamerica*

Before this current action was filed, Transamerica was already litigating several cases involving the same factual and legal issues in state and federal courts across the country. In fact, in 2007, three class actions were filed. See Gooch v. Life Investors Insurance Co. of America, No. 1:07CV-00016 (M.D. Tenn. 2007); Smith v. Life Investors Insurance Co. of America, No. 2:07CV-00681 (Pa. Ct. C.P. 2007); Pipes v. Life Investors Insurance Company of America, No. 1:07CV-00035 (E.D. Ark. 2007). Plaintiff's counsel in Pipes filed five additional cases against Defendant, including three class actions and two individual actions in various states including Arkansas,

3

Mississippi, Michigan, and Louisiana.[2] Because plaintiff's counsel in Pipes represented the largest number of plaintiffs in related cases, counsel for Transamerica began settlement discussions with them in October of 2008. Hall v. Equity National Life Ins. Co., 730 F. Supp. 2d 936, 938 (E.D. Ark. 2010); Lindley v. Life Investors Ins. Co. of America, 2010 WL 944180 (N.D. Okla. March 11, 2010). The parties held confidential mediation on November 21 and 22, 2008, but did not reach a settlement. On November 21, 2008, the Pipes court denied the plaintiff's motion for class certification. Pipes v. Life Investors Ins. Co. of America, 254 F.R.D. 544, 550 (E.D. Ark. 2008). "According to Transamerica's counsel, the defendants continued to negotiate with Pipes's counsel regarding settlement of all of the plaintiff's counsel's related actions, even after the November mediation failed to result in a settlement." Hall, 730 F. Supp. 2d at 939.

On March 3, 2009, the parties reached a preliminary understanding on the terms of a class settlement. On March 13, 2009, a nationwide class action was filed in the Circuit Court of Pulaski County, Arkansas. See Runyan v. Transamerica Life Ins. Co., Civil Action No. CV-09-2066-3 (Circuit Ct., Pulaski County, Ark.) (hereinafter "Runyan"). "The Runyan state action essentially consolidated the claims of the plaintiffs in Pipes, Runyan, Ross, Weidman, Harris, and Nolan federal actions." Hall, 730 F. Supp. 2d at 939. The six federal actions were stayed pending final approval of the settlement agreement.

On April 23, 2009, the Runyan court certified a settlement class and set a fairness hearing for July 27, 2009. On May 14, 2009, Transamerica sent notice to more than 250,000 class

---

[2]Runyan v. Transamerica Life Ins. Co., No. 6:08CV-6034 (W.D. Ark.); Ross v. Life Investors Ins. Co. of America, No. 4:08CV-00064 (S.D. Miss.); Weidman v. Life Investors Ins. Co. of America, No. 2:08CV-12870 (E.D. Mich.); Harris v. Transamerica Life Ins. Co., No. 09-13-JVP-SCR (M.D. La.); and Nolan v. Life Investors Ins. Co. of America, No. 3:08CV-00839 (M.D. La.).

members, including the Goughs. Id. The notice was also published in the *USA Today* on May 26 and 28, 2009. The Goughs failed to opt out of the proposed class settlement by the deadline of June 28, 2009, and did not object to any of the terms of the proposed class settlement. The Runyan court postponed the fairness hearing because plaintiff's counsel in another case obtained an injunction against Transamerica/Life Investors from pursuing final approval of the proposed class settlement in Runyan. See Gooch v. Life Investors Ins. Co. of America, No. 07CV-00016 (M.D. Tenn). The defendant in Gooch filed a Motion for Emergency Stay of Injunction Pending Appeal with the Sixth Circuit arguing that the injunction violated the Anti-Injunction Act, 28 U.S.C. § 2283. The Sixth Circuit agreed and vacated the injunction. In re Life Investors Ins. Co., 589 F.3d 319, 328-332 (6th Cir. 2009).

The Pulaski County Circuit Court in Runyan conducted the fairness hearing on November 9, 2009. On December 21, 2009, the Circuit Court entered a final judgment approving the class action settlement, along with 63 pages of findings of fact and conclusions of law. Hall, 730 F. Supp. 2d at 940. "As part of its findings of fact, the court found that the parties were 'represented by experienced class action counsel who worked diligently negotiating the Settlement at arms' length in an adversarial setting to ensure that the Settlement Agreement was fair, reasonable, and adequate.'" Id. The court also found that "'the Settlement was negotiated in good faith and there was no collusion or 'reverse auction' of any kind in the negotiation of the Settlement.'" Id.

*Gooch v. Life Investors Insurance Company of America*

On December 21, 2009, the same day the final judgment in Runyan was entered, the United States District Court for the Middle District of Tennessee granted class certification of a nationwide class of policyholders who have been insured under a cancer only policy issued by Life Investors.

5

See Gooch v. Life Investors Ins. Co. of America, 264 F.R.D. 340 (M.D. Tenn. Dec. 21, 2009). The District Court also granted partial summary judgment for the plaintiff on the breach of contract claim finding the term "actual charges" to mean the amount originally charged by the medical provider. Id. at 359. Defendant sought permission to file an interlocutory appeal. On June 21, 2010, the Sixth Circuit granted defendant leave to file an interlocutory appeal of the class certification. See In re: Life Investors Ins. Co. of America, 2010 WL 5185830 (6th Cir. June 21, 2010.), *consolidated with*, Gooch v. Life Investors Ins. Co. of America, Court of Appeals Docket No. 10-5723 (6th Cir.). One of the many issues raised on appeal in Gooch by the defendant is whether the Runyan Final Judgment bars the vast majority of class members' claims pursuant to the Full Faith and Credit Act, *res judicata*, and the release in the Final Judgment. The parties have now completed the briefing process in Gooch.

*Procedural History*

In the present case, pursuant to the scheduling order issued by the Magistrate Judge, Defendant filed a motion for summary judgment addressing the "threshold question of law" of whether Plaintiffs' claims are barred by the final judgment approving a comprehensive Class Action Settlement entered December 21, 2009, in Runyan v. Transamerica Life Insurance Co., Civil Action No. CV-09-2066-3 (Circuit Ct., Pulaski County, Ark.). [DN 15]. Defendant maintains that the final judgment entered by the Runyan Court resolved and released the claims Plaintiffs seek to assert in the present action. Specifically, Defendant argues that because Plaintiffs failed to opt out of the Runyan Class Settlement, Plaintiffs' claims are barred by *res judicata*, collateral estoppel, and by the release in the final judgment.

Plaintiffs disagree arguing that the Court is not required to accord full faith and credit to the

6

Runyan order because (1) the Runyan court did not comply with the minimum procedural protections guaranteed under the Due Process Clause; (2) the Runyan class members did not receive constitutionally adequate representation from Runyan class counsel; and (3) the Runyan order has no preclusive effect under Arkansas law. Plaintiffs also filed a cross-motion for summary judgment seeking affirmative relief on the merits of their claims arguing that the December 21, 2009, United States District Court for the Middle District of Tennessee opinion in Gooch v. Life Investors Insurance Company of America requires the Court to grant summary judgment in favor of Plaintiffs in the present case.

## III. DISCUSSION

The Full Faith and Credit Act provides that the "judicial proceedings" of any state "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. "'The Act thus directs all courts to treat a state court judgment with the same respect that it would receive in courts of the rendering state.'" Cahill v. Jewell, 181 F.3d 100, 1999 WL 357747, *4 (6th Cir. May 12, 1999)(quoting Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 373 (1996)). A judgment entered in a state-court class action, "like any other judgment entered in a state judicial proceedings, is presumptively entitled to full faith and credit under the express terms of the Act." Matsushita Elec. Indus. Co., 516 U.S. at 374.

"An important predicate to this rule is that, in order for the judgment to acquire the presumption of full faith and credit, the court entering the judgment must have complied with the Due Process Clause." Hege v. Aegon, Inc., 2011 WL 206318, *8 (D.S.C. Jan. 21, 2011). This is because "'[a] State may not grant preclusive effect in its own courts to a constitutionally infirm

judgment, and other state and federal courts are not required to afford full faith and credit to such a judgment.'" Id. (quoting Kremer v. Chem. Constr. Corp., 456 U.S. 461, 482 (1982) (footnote omitted)). See also Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 805-812 (1985) (a judgment rendered without affording an absent party due process is rendered without personal jurisdiction and therefore has no *res judicata* effect on that party); 5 Newberg on Class Actions § 16.25 (4th ed. 2009) (One of the threshold considerations a court must make before applying *res judicata* to a class a judgment is "whether the initial proceeding complied with due process."). Accordingly, the Court must first consider whether the initial proceeding complied with the Due Process Clause of the Fourteenth Amendment. If so, the Court must then consider the preclusive effect of the Runyan final judgment under Arkansas law.

## A. Due Process

Plaintiffs argue that the Court is not required to accord full faith and credit to the Runyan final judgment because the Runyan Court did not comply with the minimal procedural protections guaranteed under the Due Process Clause. In order to bind absent class members, a state-court judgment "must provide minimal procedural due process protection." Shutts, 472 U.S. at 811-812. In the class-action context, the United States Supreme Court requires that absent class plaintiffs:

> must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." . . . The notice should describe the action and the plaintiffs' rights in it. Additionally, . . . due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.

Shutts, 472 U.S. at 812.

### 1. Scope of Collateral Review

Courts differ, however, as to the scope of collateral review of a state court's class action judgment for satisfaction of the due process requirements such as sufficiency of notice and adequacy of representation. Some courts hold that the reviewing court may not "'reconsider [ ] ... the merits of the claim or issue,' but rather may only consider whether absent class members' due process rights were 'protected by the adoption of the appropriate procedures by the certifying court,' in which case the original judgment is entitled to full faith and credit." Moody v. Sears Roebuck and Co., 664 S.E.2d 569, 580 (N.C. App. 2008). See Epstein v. MCA, Inc., 179 F.3d 641, 649 (9th Cir.1999)("Matsushita itself indicates that broad collateral review of the adequacy of representation (or of the other due process requirements for binding absent class members) is not available."); Fine v. America Online, Inc., 743 N.E.2d 416, 420-24 (Ohio Ct. App. 2000); Lamarque v. Fairbanks Capital Corp., 927 A.2d 753, 760-65 (R.I. 2007); Hospitality Management Associates, Inc. v. Shell Oil Co., 591 S.E.2d 611, 619 (S.C. 2004). Other courts permit broader collateral review of the merits of the rendering court's due process determinations. See Stephenson v. Dow Chemical Co., 273 F.3d 249, 257-59 (2d Cir. 2001); State v. Homeside Lending, Inc., 826 A.2d 997, 1016-17 (Vt. 2003); Hege v. Aegon USA, 2011 WL 206318, *11-12 (D. S.C. Jan. 21, 2011). To date, the Sixth Circuit has not specifically addressed either Epstein or Stephenson.

Based on a review of the current case law and of policy considerations favoring both limited and broad collateral review, the Court finds that only a limited collateral review of the Shutts due process requirements is appropriate. Epstein III, 179 F.3d at 648. The Court finds the reasoning in Epstein III and Hospitality Management to be persuasive. The due process rights of absent class

9

members are protected by the application of appropriate procedures in the certifying court.[3] Id. It would run counter to the "class action goals of efficiency and finality to allow successive reviews of issues that were, in fact, fully and fairly litigated in the rendering court." Hospitality Management Associates, 591 S.E.2d at 619. Likewise, it would be "a waste of judicial resources to require reviewing courts to conduct an extensive substantive review when one has already been undertaken in a sister state." Id. As the Ohio Supreme Court observed in Fine v. America Online: "To allow substantive collateral attacks would be counter-intuitive to [the] procedural relief that a class-action suit is intended to afford our judicial system nationwide." 743 N.E.2d at 421-22. Furthermore, "second-guessing the fully litigated decisions of state courts would violate the spirit of full faith and credit." Hospitality Management Associates, 591 S.E.2d at 619 (citing Fine v. America Online, 743 N.E.2d at 421).[4] Accordingly, the Court finds that the scope of collateral review of a rendering court's due process determination in a class action lawsuit is limited to a consideration of "whether the procedures in the prior litigation afforded the party against whom the earlier judgment is asserted a 'full and fair opportunity' to litigate the claim or issue." Epstein III, 179 F.3d at 649. Therefore, the Court "must determine: (1) whether there were safeguards in place

---

[3] Furthermore, any argument that the Goughs lacked appellate rights in the Runyan class action is inaccurate. The Goughs had the opportunity to file a motion to intervene and the "concerns raised about the settlement by an objector who has been denied intervention are concerns that will receive appellate review in the context of an appeal of the denial of the motion to intervene." Hunter, 2011 WL 478594.

[4] While the Sixth Circuit has not specifically addressed Epstein or Stephenson, the Sixth Circuit in King v. South Cent. Bell Tel. and Tel. Co., 790 F.2d 524, 530 (6th Cir. 1986), engaged in a limited collateral review of the adequacy of representation requirement. Specifically, the Sixth Circuit recognized that while "due process and full faith and credit mandate that absent class members are not bound by a judgment in a class action unless the class representative provided adequate and full representation," "the adequacy of representation is a factual finding for the court before whom the class action is pending." Id.

to guarantee sufficient notice and adequate representation; and (2) whether such safeguards were, in fact, applied." Hospitality Management, 591 S.E.2d at 619.

## 2. Application of Limited Review

After a review of the record, the Court concludes that Plaintiffs were afforded due process in the Runyan action. The Runyan court approved a comprehensive notice plan, including individual written notice mailed to over 250,000 settlement class members, publication notice in USA Today, a Settlement internet website, and a 24-hour toll-free telephone call center on April 23, 2009. (Runyan Findings of Fact and Conclusions of Law (hereinafter "Findings") at 19-21.) The settlement class members received written notice of the settlement mailed to them on May 14, 2009. All settlement class members were afforded an opportunity to opt out of the settlement by the deadline of June 28, 2009. Specifically, the notice explicitly stated: "Any Settlement Class member who wishes to opt-out and be excluded from the Settlement Class must mail a written request for exclusion ("Request for Exclusion") to the Settlement Administrator postmarked on or before June 28, 2009 (the "Exclusion Deadline") at Settlement Administrator, Transamerica Life Settlement, P.S. Box 6006, Portland, OR 97228-6006." (Class Notification, ¶ 10.) The notice further provided that "Any class member who does not mail a timely and proper Request for Exclusion . . . postmarked on or before June 28, 2009 shall be considered a Class member for all purposes under the Settlement Agreement and shall be bound by the Court's Final Order and Judgment." (Id. at ¶ 10). Additionally, the notice further cautioned: "You must exclude yourself from this Settlement to continue your own lawsuit. Remember, the Exclusion Deadline is June 28, 2009." (Id. at ¶ 11). The record reflects that the settlement administrator received "approximately 476 requests for exclusion." (Findings at 21, ¶ 6.) All settlement class members were also afforded an opportunity

to object to any of the terms of the settlement. (Class Notification at ¶ 15, Ex. 15-29.) It is undisputed that Plaintiffs received the notice, and had the opportunity to opt out or object to the Runyan settlement, but did neither. Moreover, after the fairness hearing was conducted, the Runyan Court held that "the Notice Plan meets and exceeds all of the requirements of Rule 23 and due process." (Findings at 21, ¶ 7).

Adequacy of representation was also contested by several objectors and putative intervenors.[5] The Runyan court reviewed and affirmed the adequacy of the eight class representatives and their counsel. (Id. at 40-42.) Specifically, the court concluded that "[c]lass counsel . . . are experienced in class actions, and have expended considerable time and effort pursing claims on behalf of the Class Representatives." (Id. at 41, ¶ 9.) As noted by the Runyan court, at the time the settlement agreement was executed, class counsel were prosecuting six lawsuits on behalf of the class representatives including four statewide class actions. (Id.) Furthermore, the Runyan court found that "[e]ach of the Class Representatives has a strong interest in Settlement and there is no evidence of collusion." (Id. at 41, ¶ 10.) The Runyan court held that "the Class Representatives are adequate for purposes of adjudicating the Settlement in the best interests of the Settlement Class." (Id.)

Based on a review of the record, the Court concludes that the minimal due process requirements identified in Shutts were fully and fairly litigated in the Runyan court. The Runyan court held that the means of notice were sufficient, afforded class members an opportunity to opt out or object, conducted a fairness hearing in which objections to the settlement were presented, and

---

[5]See e.g., Reply Memorandum of Law in Support of Transamerica Life Insurance Company's Motion for Summary Judgment, Ex. 1 at 4-8, 45 (Shepard's counsel), Ex. 6 at 15-16, 81 (counsel for Queen, Barnhill, Gibson, Hege, Logan, and Crocker), Ex. 7 at 6, 12-15, 18-21, 24-28 (Hunter's counsel). Runyan Transcript, November 9, 2009, at 105-112; Runyan December 8, 2009, Order at 18. See also Findings at 41, 46.

12

specifically addressed adequacy of representation. Accordingly, having concluded that the procedures in the Runyan action afforded the Plaintiffs a full and fair opportunity to litigate the minimal due process requirements, the Court must next consider the preclusive effect of the Runyan judgment under Arkansas law.

## B. Arkansas Law

In deciding whether the Full Faith and Credit Act lends "preclusive effect to a particular state court decision, we look to the state's law to determine the preclusive effect it would attach to the decision." Cahill, 181 F.3d 100, 1999 WL 357747, * 4 (citing Gutierrez v. Lynch, 826 F.2d 1534, 1537 (6th Cir. 1987)). Arkansas law provides that "a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim." Barclay v. Waters, 182 S.W.3d 91, 95 (Ark. 2004) (citing Carwell Elevator Co. v. Leathers, 101 S.W.3d 211, 216 (2003)). *Res judicata*, or claims preclusion, bars relitigation of a subsequent suit when: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies." Beebe v. Fountain Lake School Dist., 231 S.W.3d 628, 635 (Ark. 2006). "Res judicata bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies." Id.

Plaintiffs maintain that the Runyan order is not entitled to Full Faith and Credit because it has no preclusive effect under Arkansas law. Specifically, Plaintiffs maintain that the Arkansas state

13

court lacked subject matter jurisdiction under Arkansas law because there was no justiciable controversy and the suit was never the subject of good faith adversarial litigation between the named plaintiffs and Transamerica. According to Plaintiffs, amendment 80 of the Arkansas Constitution confers subject matter jurisdiction over "justiciable matters." Plaintiffs argue that in the Runyan action there was no controversy between parties with adverse interests giving rise to a justiciable matter under the Arkansas Constitution. Instead, there was a pre-litigation agreement between the Defendants and the Runyan plaintiffs to use the "suit" solely as a means of approving a settlement binding putative class members without any adverse litigation taking place in the Arkansas circuit court. Plaintiffs argue that the record in Runyan establish that the "litigants" had already agreed on the terms of both certification and settlement before the Runyan action was filed. As a result, Plaintiffs maintain that without adverse interests when the action was filed, the Runyan circuit court had no constitutional authority under Arkansas law to entertain the suit and this Court is not required to accord that judgment "full faith and credit" under 28 U.S.C. § 1738. Similarly, Plaintiffs contend that since the Runyan action involved a pre-litigation agreement, the action was never "fully contested" and *res judicata* does not bar Plaintiffs' claims in the present case. Plaintiffs do not challenge the other requirements of *res judicata*.

Courts in both the District of South Carolina and the Eastern District of Arkansas have addressed similar arguments regarding the preclusive effect of the Runyan order under Arkansas law and whether the Runyan order is entitled to Full Faith and Credit. See Hege v. Aegon, 2011 WL 206318 (D. S.C. Jan. 21, 2011); Hall v. Equity Nat. Life Ins. Co., 730 F. Supp. 2d 936 (E.D. Ark. 2010). Significantly, in reviewing the preclusive effect of the Runyan order, these two district courts disagree regarding whether the Arkansas state court had subject matter jurisdiction over the class

14

action and whether the class action suit was the subject of good faith adversarial litigation between the named plaintiffs and Transamerica. The Court shall address these arguments in turn.

### 1. *Jurisdiction*

"Although a federal district court may have the power and duty to inquire as to a state court's exercise of jurisdiction, where the inquiry discloses that the jurisdictional issues were fully and fairly litigated and finally determined by the state court, further inquiry by the federal court is precluded." Hall v. Equity Nat. Life Ins. Co., 730 F. Supp. 2d 936, 944 (E.D. Ark. 2010); Durfee v. Duke, 375 U.S. 106, 111 (1963)("[A] judgment is entitled to full faith and credit-even as to questions of jurisdiction-when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment."). See also Cadle Co. v. Reiner, Reiner & Bendett, P.C., 307 Fed. Appx. 884 (6th Cir. 2009); Lexus Real Estate Group, Inc. v. Bullitt County Bank, 300 Fed. Appx. 351, 357 (6th Cir. 2008).

After reviewing the record, the Court concludes that the issue of subject matter jurisdiction was considered and determined by both the Runyan court[6] and the Arkansas Supreme Court. The Runyan court concluded that "[t]he Court has subject matter jurisdiction over this Action and to approve the Settlement, and has personal jurisdiction over the parties to the Settlement Agreement and the Class members." (Final Judgment ¶ 15.) Likewise, the Runyan court considered the various challenges to its jurisdiction, including allegations of lack of adverse interests between the settling

---

[6] See, e.g., Runyan Transcript of September 16, 2009 at 31-33 (Dan Turner: "And truly, Your Honor, before you even waste any time looking at any of this, you should convince yourself that there is jurisdiction. . . ."); id. at 40 (Mr. Leventhal: "There is no jurisdictional problem with this case being pending here."); see also id. at 36 (Shepard's counsel argued that the Runyan case was "under exclusive jurisdiction of [the federal] courts"); id. at 38 (stating "we believe that there are jurisdictional issues" here).

15

parties and allegations of collusion, fraud, or reverse auction.[7] As noted by the United States District Court in Hall v. Equity Nat. Life Ins. Co:

> The parties have submitted copies of the Circuit Court's rulings, as well as hearing transcripts of the hearings, showing that the Circuit Court's jurisdiction was litigated openly and deliberately. The Circuit Court made a final determination that its jurisdiction was proper. The Pulaski County Circuit Court found that there was no collusion, fraud, or reverse auction of any kind in the procurement of the settlement agreement. The Circuit Court found that the settlement was negotiated at arms' length, and only after several months of contentious litigation and discovery in parallel federal actions. It appears that all the same evidence and arguments on collusion were brought before the Circuit Court, that the Circuit Court thoroughly and deliberately considered those arguments, and that the Circuit Court rejected those arguments. Therefore, this Court is precluded from further inquiry and will not challenge or overturn the Circuit Court's finding that its jurisdiction was proper.

Hall, 730 F. Supp. 2d at 944. But see Hege, 2011 WL 206318, *18-20 (finding Runyan court's exercise of subject matter jurisdiction was invalid under Arkansas law). Faced with legal arguments challenging the circuit court's jurisdiction, the Runyan court rejected those challenges and approved the class settlement of the action.

Significantly, the Arkansas Supreme Court in Hunter v. Transamerican Life Insurance Company, Case No. 10-306, ___ S.W.3d ___, 2011 WL 478594 (Ark. February 9, 2011), recently determined that the Pulaski County Circuit Court in Runyan had subject matter jurisdiction over the class action suit. On appeal of the circuit court's denial of three individual class members motions to intervene, the Arkansas Supreme Court specifically held that an "Arkansas circuit court obtains subject-matter jurisdiction when it is conferred under the Arkansas Constitution or by means of constitutionally authorized statutes or court rules." Id. According to the Arkansas Supreme Court,

---

[7]See, e.g., Runyan Transcript of September 16, 2009 at 31; Runyan Transcript of September 16, 2009 at 18-19; Runyan Transcript, September 16, 2009, at 55; Findings at 14; Findings at 14, ¶ 7; Findings at 48-49, ¶ 9.

16

"the subject matter of the instant case, the approval of a class-settlement agreement in a dispute over an insurance policy, is governed by court rule in this state; specifically, Rule 23(e)." Id. Rule 23(e)(1) requires that "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." Ark. R. Civ. P. 23(e)(1) (2010). Rule 23(e)(2) further requires that "[t]he parties seeking approval of a settlement, voluntary dismissal, or compromise must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise." Ark. R. Civ. P. 23(e)(2) (2010). After reviewing the language of Rule 23(e) and the circuit court record in Runyan, the Arkansas Supreme Court found that "there can be no question that the circuit court certainly had subject-matter jurisdiction to review and approve or not approve the settlement reached in this case." Id.

In the present case, both the circuit court and the Arkansas Supreme Court determined that the circuit court had subject matter jurisdiction over the Runyan action. As a result, the Court finds the second element of the doctrine of *res judicata* satisfied.

### 2. Fully Contested in Good Faith

The Arkansas Supreme Court likewise rejected the argument that the parties in Runyan were not adverse. Hunter v. Runyan, Case No. 10-306, ___ S.W.3d ___, 2011 WL 478594 (Ark. Feb. 9, 2011). The Arkansas Supreme Court specifically found that the circuit court record does not demonstrate that the settlement agreement was reached prior to this suit being filed. According to the Arkansas Supreme Court, "[a]lthough the parties reached an understanding of the parameters of a settlement on March 3, 2009, it was not until April 17, 2009, over a month after the complaint was filed, that the parties actually executed the complete and comprehensive written settlement agreement." Id.

17

Additionally, the Arkansas Supreme Court found it significant that the settlement agreement, according to its express terms, applied to the six pending federal court cases and that these parties had been litigating against each other since June of 2007. The Arkansas Supreme Court specifically stated that:

> That settlement negotiations were underway at the time the complaint was filed in this case does not demonstrate that the settlement agreement had been finalized, signed, and executed. Moreover, it does not demonstrate that the parties were not adverse. The circuit court found that there was indeed a history of contentious litigation between these parties. Thus, even if the general parameters of a settlement had been reached, the fact remains that the parties were adverse and negotiations could have broken down at any time before the written agreement was executed on April 17, 2009, and filed with the circuit court on April 20, 2009. Indeed, the settlement agreement totals thirty-six pages, with additional exhibits of over fifty pages. The circuit court properly focused on the nature of the adverseness of the contested litigation and the tentative nature of the settlement rather than on the timing of the negotiations. Accordingly, we conclude that [the Appellant's] contention that the interests of the Company and the Settling Plaintiffs were no longer adverse because the parties had already reached a settlement when the complaint was filed is simply not supported by the record.

Id.

Given the Arkansas Supreme Court's decision in Hunter regarding the adversarial nature of the proceedings, the Court finds that the Runyan class action was fully contested in good faith; and therefore, the third element of the doctrine of *res judicata* is satisfied.

Considering the Arkansas Supreme Court's review of the Runyan final judgment, there can be no question that Arkansas will fully enforce the judgment. Accordingly, the Court must give full faith and credit to the Runyan final judgment. The final judgment binds "all Settlement Class members who have not properly and timely excluded themselves from the Class" and expressly states that "[n]otwithstanding any other provision of the Settlement Agreement or this Final Judgment, under no circumstances shall the Release be interpreted to allow any future claims

challenging the Company's interpretation of 'actual charges' or 'charges.'" (Final Judgment at 9, ¶ 8(a), ¶8(b).) While the Court may be inclined to agree with the Plaintiffs' arguments regarding the definition of "actual charges," the Court is unable to reach the merits of the case. Ultimately, Plaintiffs failed to opt out of the <u>Runyan</u> class settlement. Because the Plaintiffs' claims are the same as those litigated and released in <u>Runyan</u>, Plaintiffs' claims are barred pursuant to the doctrine of *res judicata* by the Pulaski County Circuit Court's Final Order and Judgment in <u>Runyan v. Transamerica Life Ins. Co.</u>, No. 09-2006-3.

### C. <u>Gooch v. Life Investors</u>

Finally, Plaintiffs argue that <u>Gooch v. Life Investors Ins. Co. of America</u>, 264 F.R.D. 340 (M.D. Tenn. Dec. 21, 2009), and the doctrines of *res judicata* and collateral estoppel prevent the Defendant in the present case from seeking summary judgment against these Plaintiffs. Plaintiffs have failed to offer any authority for their argument that an interlocutory class certification order, entered in another case hours after the <u>Runyan</u> Final Judgment was entered, can suspend the application of the Full Faith and Credit Act. <u>Gooch</u> is not a final judgment. Instead, it is an interlocutory order, subject to modification at any time, and is currently on interlocutory appeal to the Sixth Circuit. <u>See</u> <u>In re: Life Investors Insurance Company of America</u>, Court of Appeals Docket No. 10-501 (6th Cir.), *consolidated with*, <u>Gooch v. Life Investors Insurance Company of America</u>, Court of Appeals Docket No. 10-5723 (6th Cir.). As a result, <u>Gooch</u> does not preclude the application of the Full Faith and Credit Act to the present case. <u>See</u> <u>Mallory v. Eyrich</u>, 922 F.2d 1273, 1282 (6th Cir. 1991); <u>Temple v. Temple</u>, 172 F.3d 49, 1998 WL 939535, *4 (6th Cir. December 21, 1998).

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Transamerica Life Insurance Company, for summary judgment [DN 15] is **GRANTED** and the motion by Plaintiffs, Michael and Carol Gough, for summary judgment [DN 23] is **DENIED.**

**IT IS FURTHER ORDERED** that the motion by Defendant to strike Plaintiffs' sur-reply [DN 45] is **DENIED**. In its motion to strike, the Defendant addressed the substantive arguments raised in Plaintiffs' sur-reply. The Court has considered both Plaintiffs' sur-reply and Defendant's motion to strike in addressing the summary judgment motions.

**IT IS FURTHER ORDERED** that the motion by Plaintiffs for leave to file Judge G. Ross Anderson, Jr.'s Memorandum Opinion and to find that Judge Anderson's decision controlling in this action [DN 47] is **GRANTED IN PART AND DENIED IN PART**. The Court has considered Judge Anderson's Memorandum Opinion, as well as both parties arguments addressing its applicability to the present case.

cc: counsel of record